**FILED**
**Jul 16, 2020**
**08:51 AM(CT)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT MURFREESBORO

| | | |
|---|---|---|
| PAULETTE CARTER, | ) | Docket No. 2019-05-1059 |
| **Employee,** | ) | |
| v. | ) | |
| FRITO-LAY, INC., | ) | State File No. 52007-2019 |
| **Employer,** | ) | |
| And | ) | |
| INDEMNITY INS. CO. | ) | Judge Dale Tipps |
| **Carrier.** | ) | |

## EXPEDITED HEARING ORDER DENYING BENEFITS

This case came before the Court on July 2, 2020, for an Expedited Hearing on whether Ms. Carter is entitled to additional medical and temporary disability benefits. To receive these benefits, Ms. Carter must show that her time off work and her need for additional medical treatment arose primarily out of and in the course and scope of her employment. The Court holds Ms. Carter failed to meet this burden and denies the requested benefits.

### History of Claim

Ms. Carter was at work on June 9, 2019, when a stack of boxes fell on her. She reported the injury and received on-site physical therapy treatments for several days until Frito-Lay provided a panel of physicians. Ms. Carter selected Occupational Health Group (OHG), where an MRI revealed several tears and a bone lesion. The doctor at OHC referred Ms. Carter to her primary care physician to address the lesion and referred her to an orthopedic specialist for her work injuries. She selected Dr. Troy Layton from a panel of physicians.

Ms. Carter had her first appointment with Dr. Layton on July 29 for complaints of pain and weakness in her right shoulder. He observed the bone lesion in the glenoid that was not work-related and noted that she had already had a bone scan to diagnose the lesion. Regarding the work injury, he was "very concerned that the radiologist under-read the

1

severity of the tear." He diagnosed sprain of the right shoulder cuff capsule and impingement syndrome of the right shoulder, and he performed a subacromial injection. When Ms. Carter returned on August 26, Dr. Layton noted that she was "getting a workup" at Vanderbilt regarding the lesion. He recommended arthroscopy with decompression and rotator cuff repair once that workup was complete.

Ms. Carter filed a petition for benefit determination after Vanderbilt sent its findings to Dr. Layton. The petition stated she was concerned about proceeding with the arthroscopy because she was unsure whether Dr. Layton was taking her other conditions into account. She testified that as a result, Dr. Layton agreed to perform a MR arthrogram

When Ms. Carter next saw Dr. Layton on October 8, he noted that "there is really nothing I can offer her until we get the MR arthrogram which we recommended . . . a month ago and apparently was approved but for some reason was not performed." He could not comment on Ms. Carter's complaints of pain between the shoulder blades or in the neck because he does not treat that part of the body. He had "no explanation for why her shoulder appears to be dropping other than voluntary muscular temporary dysfunction. There is no intra-articular shoulder pathology, rotator cuff or labral, that would cause this."

Reviewing the MR arthrogram on October 22, Dr. Layton said that the labrum was completely intact, although there was some chronic joint arthrosis. He also discussed a "very limited partial-thickness tear" on the undersurface of the supraspinatus. Dr. Layton recommended non-surgical management and referred Ms. Carter to a physiatrist for her complaints of neck pain.

Ms. Carter next saw Dr. Layton on November 14. His office note for that visit is unusual, in that that it only recites the past medical history with no history of her present illness or reason for her visit. It also contained no information in the "Impression and Plan" section other than the notation "patient education." However, the Employee Return to Work form from that date shows that he reiterated his physiatrist referral, this time specifying "refer to Dr. Hazlewood."

On December 3, Ms. Carter returned to Dr. Layton. She had not yet seen a physiatrist but said the appointment had been set. He told her that her shoulder blade pain was brought on by her physical therapy for the work injury, but the medial shoulder and neck pain was not related to her right shoulder injury. Dr. Layton reiterated that he would not recommend surgery and that the bone lesion is not work-related. He said he would see her on an as-needed basis.

Dr. Hazlewood first saw Ms. Carter on December 9. His impression included chronic right shoulder pain, with the MRI showing "some partial rotator cuff tears, but nothing significant." He felt Ms. Carter's guarding and atypical pain behavior was out of proportion to her MRI findings. Dr. Hazlewood noted her history of fibromyalgia and

2

chronic opioid dependency and felt that might be factoring into her presentation. He doubted cervical disc herniation but recommended a cervical spine MRI and EMG of the right arm.

Ms. Carter returned to Dr. Hazlewood after her tests. He found degenerative changes and bilateral osteophytic disc complexes but no acute disc pathology. The EMG showed carpel tunnel syndrome but no cervical radiculopathy or brachial plexopathy. Dr. Hazlewood had no further recommendations and placed Ms. Carter at MMI. He wrote, "[t]he type of injury she describes should not cause any structural neck pathology." He characterized "subjective pain and no objective explanation" but said he would see Ms. Carter again as needed.

For several years before her work injury, Ms. Carter regularly saw her personal physician, Dr. Paul Sain, for chronic pain management. His records show he prescribed opioids for fibromyalgia and neuropathy. Ms. Carter continued to treat with Dr. Sain after her work injury, and he referred her to an orthopedic specialist, Dr. Robert Beasley, who assessed AC joint arthritis and an incomplete tear of the right rotator cuff, "unspecified whether traumatic."

Dr. Sain completed a C-30A Final Medical Report on June 20, 2020, stating that Ms. Carter was unable to work from January 16, 2020, to the present. He also wrote a letter that stated he had "witnessed more of an effort to determine who was responsible for her symptoms rather than an effort to treat the patient and get to the root of her problems." He concluded:

> I feel, that as her family physician, I am best qualified to coordinate her care and recommend treatment and referrals. I have been very limited in this case and I feel that the system has failed Mrs. Carter. Whether the subchondral cyst was present prior to the injury, or a result of the injury (as was the opinion of her orthopedic oncologist); whether the arthritis in her cervical spine was a predisposing factor, or the bulging discs in her neck were present before or after the injury, these things are irrelevant to me as a family physician. I just know that she has been in pain, she has been shuffled around the system, and she has been unable to get needed care that I cannot provide.

At the hearing, Ms. Carter explained that she appreciates the treatment she received, but it has not solved her problems. She feels that her injuries have made her a completely different person, and she wants her pre-injury life back. In her Pre-Trial Brief, she requested: 1) a neurosurgeon or orthopedic surgeon to evaluate her cervical spine and right shoulder; 2) "medical benefits for work related injuries;" 3) compensation for time lost in wages and mileage; 4) reimbursement of medical bills and mileage; and 5) for Dr. Sain to oversee and coordinate all future medical care. Additional issues identified in the joint Pre-Compensation Hearing Statement are: 6) not receiving a panel within three days of

injury; 7) not receiving a panel for physiatrist referral; and 8) job status – returning to Frito-Lay when she is able.[1]

Frito-Lay contended that Ms. Carter is not entitled to additional benefits. It pointed out that she received medical benefits through authorized specialists and temporary disability benefits during the time those physicians took her off work. Frito-Lay argued that both authorized doctors have given an opinion that Ms. Carter's current symptoms are not related to her work accident and have dismissed her from care. Therefore, she is not entitled to any additional treatment. Finally, Ms. Carter is not entitled to a second opinion because neither authorized doctor is currently recommending surgery.

## Findings of Fact and Conclusions of Law

Ms. Carter must provide sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2019); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). To prove a compensable injury, Ms. Carter must show that her alleged injuries arose primarily out of and in the course and scope of her employment. This includes the requirement that she must show, "to a reasonable degree of medical certainty that [the incident] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. *See* Tenn. Code Ann. § 50-6-102(14).

### Medical Benefits

Frito-Lay does not dispute that an injury occurred. The first question, therefore, is whether Ms. Carter appears likely to prove at a hearing on the merits that her work injury primarily caused her current symptoms or need for treatment. The Court cannot find at this time that she is likely to meet this burden.

Frito-Lay has provided Ms. Carter with medical treatment, including every specialist recommended by her authorized doctors. This includes an orthopedic surgeon, Dr. Layton, for her shoulder complaints, and a physiatrist, Dr. Hazlewood, to evaluate her cervical spine. The Court understands Ms. Carter's dissatisfaction with the results of her treatment, but she has not identified any legal basis that would justify an order for additional medical benefits. Although Dr. Sain believes Ms. Carter needs a neurosurgeon,

[1] Ms. Carter also testified about a second injury that occurred on July 23, 2019, and about issues related to her termination and her desire to regain her job at Frito-Lay. The Court has no jurisdiction over the July 23 injury, as it was not included in the Petition for Benefit Determination or the Dispute Certification Notice, nor was it consolidated with this claim. Similarly, the Court has no jurisdiction over Ms. Carter's employment claims.

none of the authorized physicians has made that referral. Further, the Court has no evidence that this purported need for a neurosurgeon arose primarily out of this accident. Dr. Sain's critique of Ms. Carter's course of treatment is general rather than specific, and does not constitute medical proof that her treatment was improper or inadequate. Without that type of proof, the Court has no authority to order the additional neurosurgical or orthopedic evaluation she seeks. *See Baker v. Electrolux,* 2017 TN Wrk. Comp. App. Bd. LEXIS 65, at *7-10 (Oct. 20, 2017).[2]

Next, Ms. Carter is not entitled to a second opinion under Tennessee Code Annotated section 50-6-204(a)(3)(C), because it only applies to cases where the authorized doctor has recommended surgery. *See Petty v. Convention Prod. Rigging,* 2016 TN Wrk. Comp. App. Bd. LEXIS 95, at *20-21 (Dec. 29, 2016). Ms. Carter argued she is entitled to a second opinion because Dr. Layton recommended surgery. She is correct that he made that recommendation, but he changed his mind after the arthrogram. This means Ms. Carter has no current medical recommendation that would support an order for a second opinion, and the Court cannot substitute its judgment for Dr. Layton's opinion that no surgery is necessary.

One of the issues Ms. Carter identified was the fact that she did not receive a panel of physiatrists. As noted above, Dr. Layton referred Ms. Carter to a physiatrist for her complaints of neck pain on October 22, and Frito-Lay did not provide a panel. Instead, Ms. Carter said Frito-Lay asked her to return to Dr. Layton before the next scheduled appointment. She did so on November 14, and he changed his physiatrist referral to specify Dr. Hazlewood. The Court declines to order a replacement panel at this time, as Ms. Carter accepted Dr. Hazlewood's treatment and did not present any evidence suggesting that it was medically deficient. However, the Court is troubled by Frito-Lay's circumvention of its responsibility to promptly provide a valid panel of physicians in response to Dr. Layton's original referral, as required by Tennessee Compilation Rules and Regulations 0800-02-01-.06(2). Therefore, the Court refers this case to the Compliance Program for investigation and possible assessment of a civil penalty.[3] Upon its issuance, a copy of this Order will be sent to the Compliance Program. *See* Tenn. Comp. R. & Regs. 0800-02-24-.03.

Ms. Carter's request for Dr. Sain to oversee and coordinate all her future medical care is not supported by the proof. As noted above, Frito-Lay has discharged its statutory

---

[2] The parties disputed whether Dr. Hazlewood's causation opinion is entitled to the presumption of correctness. It is not, since Dr. Hazlewood was a direct referral and was not selected from a panel. *See Gilbert v. United Parcel Service, Inc.*, 2019 TN Wrk. Comp. App. Bd. LEXIS 20, at *13 (June 7, 2019). However, because no other medical opinion regarding causation was admitted into evidence, Dr. Hazlewood's causation opinions are unrebutted at this time.

[3] This assessment should include consideration of Ms. Carter's testimony that Frito-Lay also failed to provide an initial panel within three days of notice of injury and instead provided on-site physical therapy treatment for several days.

obligation to provide medical benefits made reasonably necessary by accident. Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) requires Ms. Carter to "accept the medical benefits afforded under this section" and allows employers to designate the panel doctors who are authorized to provide those benefits. Both Dr. Layton and Dr. Hazlewood said that they would see Ms. Carter again as needed, and she presented no evidence that Frito-Lay refused to allow her to return to them. Thus, it appears treatment with the authorized doctors is still available. Without any proof that Frito-Lay failed to provide required treatment, the Court has no authority to replace the authorized physicians with Dr. Sain.

Regarding Ms. Carter's request for medical bill reimbursement, an employer may be required to pay for unauthorized treatment if it does not provide the treatment made reasonably necessary by the work injury. *See Hackney v. Integrity Staffing Solutions,* 2016 TN Wrk. Comp. App. Bd. LEXIS 29, at *8-9 (July 22, 2016). As noted above, the Court has no proof that Frito-Lay failed to provide authorized physicians or failed to approve the treatment they ordered. Therefore, without evidence that Ms. Carter's unauthorized medical bills were the result of denied treatment or that the bills represent reasonable and necessary treatment, the Court cannot order Frito-Lay to reimburse her for those expenses.[4]

*Temporary Disability Benefits*

To receive temporary total disability benefits, Ms. Carter must establish: (1) she became disabled from working due to a compensable injury; (2) a causal connection between her injury and her inability to work; and (3) her period of disability. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). The parties stipulated that Frito-Lay paid temporary disability benefits through January 15, 2020, when Dr. Hazlewood said she reached maximum medical improvement. Ms. Carter presented evidence regarding additional dates of disability in Dr. Sain's C-30A report. However, as noted above, she presented no medical proof that the conditions addressed by Dr. Sain arose primarily out of this accident. Without that evidence, Ms. Carter cannot show that her disability was caused by a compensable injury. Therefore, she has not proven she is likely to succeed on a claim for temporary total disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Carter's claims against Frito-Lay for additional medical and temporary disability benefits are denied at this time.

2. This case is set for a Scheduling Hearing on September 24, 2020, at 9:00 a.m. You must call toll-free at 855-874-0473 to participate. Failure to call might result in a

---

[4] In response to Ms. Carter's claim for mileage reimbursement, Frito-Lay's counsel stated during the hearing that if she filed a reimbursement request for her visits with Dr. Hazlewood, Frito-Lay would pay her mileage.

determination of the issues without your further participation. All conferences are set using Central Time.

**ENTERED JULY 16, 2020.**


_____
**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Indexed medical records
2. Photograph of Ms. Carter and PPW box
3. C-32 Standard Medical Form (Identification only)
4. C-30A Final Medical Report
5. June 11, 2020 letter of Dr. Sain
6. February 13, 2020 email (Identification only)
7. January 115, 2020 letter of Dr. Sain
8. Annotated medical records (Identification only)
9. Annotated Return-to-Work forms (Identification only)
10. Annotated Choice of Physician form (Identification only)
11. July 23, 2019 Choice of Physician form
12. Wage Statement
13. Dr. Layton's November 14, 2020 referral to Dr. Hazlewood
14. Records of Dr. Layton
15. Records of Dr. Hazlewood
16. Affidavit of Paulette Carter
17. Attendance documents
18. Accident Investigation Form
19. Medical bills and receipts (Identification only)

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Notice of Intent to Use C-32
5. Objection to C-32
6. Joint Exhibit List
7. Joint Pre-Compensation Hearing Statement
8. Employer's Pre-Trial Brief

7

9. Employee's Pre-Trial Brief

## CERTIFICATE OF SERVICE

I certify that a copy of the Expedited Hearing Order was sent as indicated on July 16, 2020.

| Name | Certified Mail | Email | Service Sent To |
|------|------|------|------|
| Paulette Carter | | X | Gtp.2000daytona@gmail.com |
| John R. Lewis, Employer's Attorney | | X | john@johnlewisattorney.com |
| Compliance Program | | X | WCCompliance.Program@tn.gov |

_Penny Shrum_

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

8



Expedited Hearing Order Right to Appeal:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1.  Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____ ☐ Motion Order filed on _____

☐ Compensation Order filed on_____ ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*